UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TODD D. ROSENFIELD,

                            Plaintiff,

v.                                                          1:18-CV-1299
                                                            (GTS/CFH)
NEW YORK STATE DIVISION OF VETERANS'
AFFAIRS; BENJAMIN POMERANCE; JOEL
EVANS; and JONATHAN FISHBEIN,

                            Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF VINCENT U. UBA                         VINCENT U. UBA
  Counsel for Plaintiff
750 Broadway
Albany, NY 12207

HON. LETITIA A. JAMES                            CHRISTOPHER J. HUMMEL, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment discrimination action filed by Todd D.

Rosenfield ("Plaintiff") against the New York State Division of Veterans' Affairs ("DVA"),

Benjamin Pomerance, Joel Evans, and Jonathan Fishbein (together "Defendants"), are the

following motions: (1) Defendants' motion to dismiss Plaintiff's Complaint for lack of subject-

matter jurisdiction and failure to state a claim upon which relief can be granted; (2) Plaintiff's

cross-motion to amend the Complaint; and (3) Plaintiff's second cross-motion to amend the

Complaint. (Dkt. Nos. 8, 13, 19.) For the reasons set forth below, Defendants' motion is granted in part and denied in part, Plaintiff's first cross-motion to amend the Complaint is denied as moot based on his second cross-motion, and Plaintiff's second cross-motion to amend the Complaint is granted in part and denied in part.

## I.     RELEVANT BACKGROUND

### A.     Plaintiffs' Complaint

Generally, in his Complaint, Plaintiff, who was employed by Defendant DVA as a Project Manager 1 at the date the Complaint was filed, asserts four claims. (Dkt. No. 1 [Pl.'s Compl.].) First, Plaintiff claims that Defendants discriminated against him on the basis of his disability, namely post traumatic stress disorder ("PTSD"), in violation of the Americans with Disabilities Act of 1990 ("ADA"), specifically 42 U.S.C. § 12112. (*Id.* at ¶¶ 119-25.) More specifically, Plaintiff alleges that Defendants treated him differently than they treated non-disabled employees by "viewing, portraying, treating, and stigmatizing plaintiff as a disabled dysfunctional veteran suffering from PTSD who is easily set off and can explode at any moment in time," which included reprimanding him for behavior that other employees engaged in, subjecting him and his behavior to "microscopic scrutiny," making comments to others in the workplace about his disability that further stigmatized him, and denying him promotions while giving him extra work outside his job title. (*Id.* at ¶¶ 40-80, 100-14.)

Second, Plaintiff claims that Defendants subjected him to a hostile work environment because of his disability in violation of 42 U.S.C. § 12112. (*Id.* at ¶¶ 126-34.) More specifically, Plaintiff alleges that Defendants engaged in a pattern of harassing discriminatory conduct that significantly and severely altered the terms and conditions of his employment and created an

abusive and humiliating work environment.  (*Id.* at ¶¶ 41-99.)

Third, Plaintiff claims that Defendants retaliated against him for reporting feelings of discrimination and filing a discrimination complaint with the New York State Division of Human Rights in violation of 42 U.S.C. § 12203.  (*Id.* at ¶¶ 135-46.)  More specifically, Plaintiff alleges that Defendants' adverse actions included (a) intensifying their efforts to exclude him from necessary information in the workplace, (b) failing to notify him when a new administrative assistant began working there, (c) making it difficult for him to obtain reasonable accommodations, (d) denying him his own printer and scanner despite the fact everyone else in the office had one and his entitlement to those items had already been approved, and (e) refusing to promote him.  (*Id.* at ¶¶ 81-114.)

Fourth, Plaintiff claims that Defendants defamed him by making statements related to his behavior that were false, were without privilege, and tended to injure him in the conduct of his business, trade, or profession.  (*Id.* at ¶¶ 147-56.)  More specifically, Plaintiff alleges that Defendant Fishbein sent an e-mail to "numerous persons at ITS and DVA" in which he apologized on behalf of Plaintiff for Plaintiff's behavior at a meeting; Plaintiff alleges that this statement is defamatory because he did not use any strong or inappropriate language or conduct himself in a manner that required an apology.  (*Id.* at ¶¶ 46-55.)

**B.     Parties' Briefing on the Pending Motions**

**1.     Defendants' Memorandum of Law**

Generally, Defendants assert seven arguments in support of their motion to dismiss. (Dkt. No. 8, Attach. 2, at 6-18 [Defs.' Mem. of Law].)  First, Defendants argue that the Eleventh Amendment bars Plaintiff's claims for money damages under the ADA against both the state and

individual Defendants in their official capacities.  (*Id.* at 6-7.)  Defendants argue that the state has not consented to suit or waived its sovereign immunity under the ADA, and such immunity extends to the Division of Veterans' Affairs because it is an administrative arm of the state.  (*Id.*)

Second, Defendants argue that the claims against the individual Defendants in their personal capacities must also be dismissed because the ADA does not impose liability on individuals in their personal capacity.  (*Id.* at 8.)

Third, Defendants argue that, in the alternative to the above arguments, Plaintiff has failed to state a claim for discrimination under the ADA because he has not alleged facts plausibly suggesting that he suffered an adverse action.  (*Id.* at 8-11.)  More specifically, Defendants argue that Plaintiff's allegations are mostly vague and conclusory assertions about Defendants' failure to promote him and about assigning him extra work without alleging what promotions Plaintiff sought, what promotions he was denied, and the additional duties he was required to do without additional compensation.  (*Id.*)  Defendants also argue that Plaintiff has failed to allege anything more than mere inconveniences that do not arise to the level of adverse actions. (*Id.*)

Fourth, Defendants argue that, in the alternative to the first two arguments, Plaintiff has failed to state a claim for hostile work environment, because (a) the Second Circuit has not yet ruled on whether such claim is cognizable under the ADA, and (b) even if this claim is cognizable, Plaintiff has not alleged facts plausibly suggesting an adverse action or a sufficiently severe pattern of harassment.  (*Id.* at 11-13.)

Fifth, Defendants argue that, in the alternative to the first two arguments, Plaintiff has failed to state a claim for retaliation because (a) some of the events he relies on to support that

claim occurred before the alleged protected activity, and (b) he has not otherwise shown that he suffered an adverse action sufficient to sustain his claim. (*Id.* at 14-16.)

Sixth, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law defamation claim if it finds that all the federal claims must be dismissed. (*Id.* at 16.)

Seventh, Defendants argue that, in the alternative, Plaintiff has failed to state a claim for defamation because he has failed to identify the particular statements that were defamatory, how they were false, to whom they were published, and how he was injured by them. (*Id.* at 16-18.) More specifically, Defendants argue that the only apparent basis of this claim is a statement made in a November 16, 2017, email from Defendant Fishbein to "DVA and ITS staff"; but Plaintiff has provided no allegations as to what the statement actually was, and consideration of the email (which Defendant argues is incorporated by reference in the Complaint) shows that no defamatory or injurious statements were made. (*Id.*)

### 2. Plaintiffs' Opposition Memorandum of Law and Cross-Motion to Amend His Complaint

Generally, in his opposition and cross-motion to amend his Complaint, Plaintiff makes eight arguments. (Dkt. No. 13, Attach. 2, at 7-23 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff seeks leave to amend his Complaint to add additional factual allegations, new claims (for discrimination, hostile work environment, and retaliation under the Rehabilitation Act), and an additional defendant (Jason Chakot). (*Id.* at 7-8.) Plaintiff argues that amendment is proper because (a) there will be no prejudice given the early stage of the litigation, (b) there is a need to clarify certain matters based on the arguments raised by Defendants in their motion, (c) there has

been no bad faith or repeated failure to remedy deficiencies, and (d) the amendments are not futile.  (*Id.* at 7-8.)

Second, Plaintiff argues that the Eleventh Amendment does not bar claims for prospective injunctive relief or claims for money damages under the Rehabilitation Act (both of which are asserted in the proposed Amended Complaint).  (*Id.* at 8-9.)

Third, Plaintiff argues that he is permitted to assert claims against Defendants in their individual capacities under the ADA because, under the *Ex parte Young* doctrine, an individual sued in his or her official capacity is a public entity that is subject to liability.  (*Id.* at 10.)

Fourth, Plaintiff argues that he has stated a claim for discrimination under both the ADA and the Rehabilitation Act.  (*Id.* at 10-13.)  More specifically, Plaintiff argues that he has alleged an adverse action based on Defendants' failure to promote him because he has alleged that (a) he was qualified, (b) he requested a promotion, (c) other non-disabled employees were given promotions that Plaintiff was not permitted to apply to, and (d) he filed a grievance objecting to Defendants' giving him additional work, that grievance was sustained, and Defendants violated the grievance decision by continuing to give him work outside his job title.  (*Id.*)

Fifth, Plaintiff argues that he has stated a claim for hostile work environment under the ADA and the Rehabilitation Act because the facts alleged plausibly suggest those claims.  (*Id.* at 13-17.)

Sixth, Plaintiff argues that he has stated a claim for retaliation under the ADA and the Rehabilitation Act because the facts alleged plausibly suggest those claims.  (*Id.* at 17-20.)

Seventh, Plaintiff argues that the Court should exercise supplemental jurisdiction over his state law claim of defamation.  (*Id.* at 20.)

Eighth, Plaintiff argues that he has stated a claim for defamation related to the email of November 16, 2017, because (a) he did not engage in conduct that required an apology, (b) he did not engage in any conduct that made anyone uncomfortable, (c) the defamatory nature of the statement is apparent from the historical characterization of Plaintiff by Defendants as unstable, and (d) the statements are injurious to his trade, business, or profession given that they relate to his work performance and thus constitute defamation per se. (*Id.* at 20-23.) Plaintiff also argues that the Court should not consider the copy of the relevant email attached to Defendants' motion because doing so would be improper under the standards of Fed. R. Civ. P. 12(b)(6), but that, if the Court does choose to consider that email, it should consider it in the full context of Plaintiff's allegations, including a new exhibit submitted with Plaintiff's opposition memorandum of law containing an email that Plaintiff's union sent to Defendant Fishbein regarding the allegedly defamatory email. (*Id.*)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants make eight arguments. (Dkt. No. 18, at 8-19 [Defs.' Reply Mem. of Law].) First, Defendants argue that (a) Plaintiff's claims for money damages under the ADA are barred by the Eleventh Amendment, and (b) his motion to amend the Complaint to assert entitlement to injunctive relief should be denied as futile because the requested relief is simply an "obey the law" or "command not to discriminate" injunction to which Plaintiff is plainly not entitled. (*Id.* at 8-10.) More specifically, Defendants argue that Plaintiff is not entitled to an injunction requiring Defendants to promote him to Grade 25 Project Manager 2 because the grievance decision from the Governor's Office of Employee Relations ("GOER") stated that he was performing work as a Grade 23 Administrative Analyst

7

and he was subsequently reclassified as such.  (*Id.*)

Second, Defendants argue that the ADA and Rehabilitation Act claims against the individual Defendants in their personal capacities must be dismissed because neither of those statutes allow suits against individual Defendants.  (*Id.* at 10.)

Third, Defendants argue that the Complaint does not state a plausible claim of discrimination, and that granting leave to amend would be futile because the new allegations do not plausibly suggest either an adverse action or that Defendants' conduct was on the basis of Plaintiff's disability.  (*Id.* at 11-13.)

Fourth, Defendants argue that the Complaint does not state a plausible claim for hostile work environment, and that granting leave to amend would be futile because the allegations in both the Complaint and the proposed Amended Complaint are vague and plausibly suggest only isolated incidents that do not rise to the level of a hostile work environment.  (*Id.* at 13-15.)

Fifth, Defendants argue that the Complaint does not state a plausible claim for retaliation, and that granting leave to amend would be futile because Plaintiff has not alleged facts plausibly suggesting an adverse action.  (*Id.* at 16-17.)

Sixth, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law defamation claim if the federal claims are dismissed.  (*Id.* at 17-18.)

Seventh, Defendants argue that Plaintiff has failed to state a claim for defamation, and that granting leave to amend the Complaint would be futile because he has not alleged any statement about him that was actually defamatory and has not alleged any injury resulting from the alleged statement.  (*Id.* at 18-19.)

Eighth, Defendants argue that leave to amend the Complaint to assert claims under the Rehabilitation Act should be denied as futile because claims for discrimination, hostile work environment, and retaliation under the Rehabilitation Act are subject to the same standards as are the claims under the ADA, and thus would be dismissed for the reasons discussed above. (*Id.* at 19.)

### 4. Plaintiff's Cross-Motion to Amend the Complaint and the Proposed Amended Complaint

After Defendants filed their reply, Plaintiff filed a proposed Second Amended Complaint, which, in addition to the claims for discrimination, hostile work environment, and retaliation under the Rehabilitation Act against New York State, additional defendant, and requests for injunctive relief included in the proposed Amended Complaint, includes (1) new factual allegations related to more-recent events occurring after the filing of the Complaint and (2) a new defendant (Matthew Guinane). (Dkt. No. 19, Attach. 1 [Proposed Second Am. Compl.].)

### 5. Defendants' Supplemental Reply Memorandum of Law

Generally, in their supplemental reply memorandum of law, Defendants make five arguments. (Dkt. No. 24, at 4-7 [Defs.' Supplemental Reply Mem. of Law].) First, Defendants argue that the newly asserted claims under the ADA and Rehabilitation Act against proposed Defendant Guinane in his personal capacity are futile for the reasons already discussed. (*Id.* at 4.)

Second, Defendants argue that the amendments made in the proposed Second Amended Complaint as to the discrimination claim under the ADA are futile for three reasons: (1) a requirement that Plaintiff keep his office door open was an inconvenience rather than an adverse

action; (2) Plaintiff has not alleged facts plausibly suggesting that the request constructively denied his granted accommodation because he has not alleged that leaving his door open resulted in unmanageable noise or distraction; and (3) Defendants also argue that Plaintiff has not alleged facts plausibly suggesting that he was placed on administrative leave or suspension for discriminatory reasons. (*Id.* at 4-5.)

Third, Defendants argue that the amendments made in the proposed Second Amended Complaint as to the hostile work environment claim under the ADA are futile because Plaintiff still has not alleged facts plausibly suggesting a pervasive pattern of conduct. (*Id.* at 5-6.)

Fourth, Defendants argue that the amendments made in the proposed Second Amended Complaint as to the retaliation claim under the ADA are futile because Plaintiff still has not alleged facts plausibly suggesting either an adverse action or a causal connection between his alleged protected activity and any adverse action. (*Id.* at 6-7.)

Fifth, Defendants argue that granting leave to amend the claims under the Rehabilitation Act would be futile because they are subject to the same standard as claims under the ADA. (*Id.* at 7.)

## II.     GOVERNING LEGAL STANDARDS

### A.     Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.

2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996] ).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved, and inferences drawn, in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

> **B.**    **Legal Standards Governing a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no

## C.    Legal Standards Governing a Motion to Amend a Complaint

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states

that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2);

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962); *Manson v. Stacescu*, 11 F.3d 1127,

1133 (2d Cir.1993).  Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be

freely given in the absence of any apparent or declared reason to not grant leave to amend, such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, or futility of amendment.  *See Foman*, 371 U.S. at 182; *S.S.*

*Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir.1979); *Meyer v.*

*First Franklin Loan Servs, Inc.*, No. 08–CV1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19,

2010); *Jones v. McMahon*, No. 98–CV–0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11,

2007).

"Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a

basis for a district court to deny the right to amend."  *Block v. First Blood Assocs.*, 988 F.2d 344,

350 (2d Cir. 1993) (citation omitted).  "In determining what constitutes prejudice, [courts]

---

dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id*. (citation and quotation omitted).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc*., 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp*., 310 F.3d 243, 258 [2d Cir. 2002]). Therefore, a proposed amended claim is not futile if it states a claim upon which relief can be granted (and it is not defective for lack of subject-matter jurisdiction). *See id.* (citations omitted).

## III. ANALYSIS

### A. Whether the Eleventh Amendment Bars Plaintiff's Claims Against the State Defendant and Individual Defendants in Their Official Capacities

After careful consideration, the Court answers this question in the affirmative as to the claims asserted in the Complaint, but finds that the claims asserted in Plaintiff's proposed Second Amended Complaint seek relief that would not be barred by the Eleventh Amendment.

The Eleventh Amendment bars suit against the states and their instrumentalities unless the state has waived its sovereign immunity or Congress has validly abrogated that immunity. *Virginia Office of Protection and Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011). Congress has not validly abrogated the states' sovereign immunity for violations under Titles I or V of the ADA, which encompasses claims for disability discrimination in the employment context. *Maoriello v. New York State Office for People with Developmental Disabilities*, 14-CV-0214,

2015 WL 5749879, at *12 (N.D.N.Y. Sept. 30, 2015) (Suddaby, C.J.); *see also Quadir v. New York State Dept. of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (stating that "[i]t is well settled that states retain their sovereign immunity against discrimination claims brought under Title I of the ADA," and that such findings have overwhelmingly been applied to claims under Title V of the ADA as well). Nor has New York ever waived its sovereign immunity for ADA claims. *Quadir*, 39 F. Supp. 3d at 537. The Eleventh Amendment therefore applies to Plaintiff's claims under the ADA.

A suit against a state official in his or her official capacity for monetary damages is treated as a suit against the state, and therefore that official is protected by the doctrine of sovereign immunity to the same extent as the state itself is protected. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, the doctrine of *Ex parte Young* permits a plaintiff to sue state officials in their official capacities for prospective equitable relief to remedy an ongoing violation of federal law. *Frew ex rel. Frew v. Hawkins*, 473 U.S. 159, 166 (1985). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland. Inc. v. Public Serv. Comm'n of Maryland.*, 535 U.S. 635, 645 (2002).

## 1.     The Complaint

The Court begins by observing that the Complaint contains requests only for monetary relief, with the exception of Plaintiff's statement that "Defendants should also be enjoined from making any such further defamatory statements about plaintiff." (Dkt. No. 1, at ¶ 156 & p. 20 [Pl.'s Compl.].) Plaintiff's requests for monetary relief on his ADA claims are therefore clearly

proscribed by the Eleventh Amendment. Additionally, Plaintiff's request for an injunction against further defamatory statements, while prospective, does not fall under the ambit of *Ex parte Young* because it does not seek to enjoin an ongoing violation of *federal* law; rather, his defamation claim is premised on *state* law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (finding *Ex parte Young* doctrine inapplicable to suits against state officials on the basis of state law); *Brown v. New York*, 975 F. Supp. 2d 209, 226 (N.D.N.Y. 2013) (D'Agostino) (noting that the Eleventh Amendment bars suits in federal court seeking relief against state officials for violations of state law and that *Ex parte Young* is inapplicable where officials are alleged to have violated state law unless the plaintiff can show that the official acted "without any authority whatsoever" under state law). As a result, this request for prospective injunctive relief does not provide a basis for finding that the Eleventh Amendment is inapplicable.

For the above reasons, the Court finds that Plaintiff's ADA claims in the Complaint against Defendant DVA and the individual Defendants in their official capacities are barred by the Eleventh Amendment.

### 2. The Proposed Second Amended Complaint

Having found that Plaintiff's ADA claims in the Complaint are barred by the Eleventh Amendment, the Court must now determine whether allowing Plaintiff to substitute the proposed Second Amended Complaint for the Complaint would be futile. As discussed above in Part I.B.4. of this Decision and Order, the proposed Second Amended Complaint has added, in relevant part, claims for discrimination, hostile work environment, and retaliation under the Rehabilitation Act, as well as a request for the following forms of injunctive relief: (1) that

18

Defendants be permanently enjoined from continuing to stigmatize him and discriminate against him based on his status as a disabled combat veteran; (2) that Defendants be permanently enjoined from further denying him promotions, advancement opportunities, and other privileges of employment; (3) that Defendants be preliminarily enjoined from continuing to contravene the GOER decision of December 20, 2018; and (4) that Defendants be permanently enjoined from engaging in any discriminatory or other unlawful employment practices against him.  (Dkt. No. 19, Attach. 1, at ¶¶ 198, 208, p. 31 [Pl.'s Proposed Second Am. Compl.].)

As an initial matter, the Court finds that multiple courts have determined that Section 504 of the Rehabilitation Act includes a valid abrogation and waiver of immunity where, as here, New York has accepted federal funds under that Act.  *Dollinger v. New York State Ins. Fund*, 14-CV-0908, 2015 WL 8491013, at *4 (N.D.N.Y. Dec. 10, 2015) (D'Agostino, J.); *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 334 (E.D.N.Y. 2014); *Quadir v. New York State Dept. of Labor*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014); *Alexander v. State Univ. of New York at Buffalo*, 932 F. Supp. 2d 437, 443 (W.D.N.Y. 2013); *see Sossamon v. Texas*, 563 U.S. 277, 291 (2011) (noting that a provision in the Rehabilitation Act "expressly waives state sovereign immunity for violations of 'section 504 of the Rehabilitation Act. . . .'").  As a result, the Court finds that granting leave to amend the Complaint would not be futile in this respect because Plaintiff's addition of claims under the Rehabilitation Act would not be barred by the Eleventh Amendment.  The Court notes that Plaintiff asserts these claims against only Defendant DVA (as an agency of New York State).

As to the additional requests for injunctive relief related to Plaintiff's claims against the individual Defendants under the ADA, the Court finds that Plaintiff has sufficiently shown that

the requested relief would satisfy the requirements for applying *Ex parte Young*. The relief requested is clearly based on federal law because it is premised on conduct allegedly violating the ADA. Additionally, the relief requested is prospective in that it does not seek merely to remedy past wrongs, but to enjoin Defendants from continuing to engage in conduct in the future. Nor does the requested relief require expenditure of any state money beyond what would be a necessary consequence of compliance in the future, or otherwise encroach on the State's inherent sovereignty. *See Edelman v. Jordan*, 415 U.S. 651, 667-71 (1974) (noting that an ancillary effect on the state treasury resulting from prospective injunction relief is permissible under *Ex parte Young* so long as it does not have the practical effect of being retroactive monetary relief).

Defendants' argument that the requested injunctive relief is too vague to satisfy the specificity requirements for an injunction under Fed. R. Civ. P. 65(d) does not contain a reason to decline to apply *Ex parte Young* and allow consideration of the merits of Plaintiff's claims. Although Plaintiff's request that Defendants be enjoined from discriminating against him is essentially an injunction to comply with federal law, that fact does not preclude a finding that the Eleventh Amendment does not bar the request so long as the injunction sought is prospective. *See Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (noting that *Edelman* and *Ex parte Young* "permit[] federal courts to enjoin state officials to conform their conduct to the requirements of federal law"). Additionally, Plaintiff's other requested injunctive relief is more specific (i.e., that Defendants be enjoined from denying him promotions and to comply with the GOER decision). As to Defendants' arguments that Plaintiff has not specified which promotions he is entitled to and has not plausibly alleged that the GOER decision entitles him any further action by Defendants, whether and to what extent Plaintiff is entitled to this requested relief is a matter to

be determined through a failure-to-state-a-claim consideration of Plaintiff's claims, not a threshold requirement of showing that the Eleventh Amendment does not bar such substantive consideration. As discussed above, the *Ex parte Young* analysis requires only a request for prospective relief related to an ongoing violation of federal law, and Defendants have not cited any legal authority to suggest that this Court must apply the more demanding standard of analysis for which they argue. *Verizon Maryland. Inc.*, 535 U.S. at 645.

For all the above reasons, the Court finds that amendment of Plaintiff's Complaint would not be futile (by being barred by the doctrine of sovereign immunity) because Plaintiff's proposed Second Amended Complaint alleges facts plausibly suggesting that the Eleventh Amendment does not bar his claims against Defendant DVA under the Rehabilitation Act, or his claims against the individual Defendants in their official capacities under the ADA to the extent they are premised on his requests for injunctive relief.

**B.** **Whether Plaintiff Has Properly Brought Claims Against the Individual Defendants in Their Personal Capacities**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law. *See supra,* Part I.B.1. of this Decision and Order. To those reasons, the Court adds the following analysis.

It is well recognized in this Circuit that individuals cannot be sued in their personal capacity under either the ADA or the Rehabilitation Act. *See Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) ("Darcy may not sue these defendants in their personal capacities, because the ADA and ADEA, like Title VII, do not provide for actions against individual supervisors."); *accord Maioriello v. New York State Off. for People with Developmental*

*Disabilities*, 14-CV-0214, 2015 WL 5749879, at \*19 (N.D.N.Y. Sept. 30, 2015) (Suddaby, C.J.)

(ADA and Rehabilitation Act); *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 610 (W.D.N.Y. 2015)

(ADA and Rehabilitation Act); *Keitt v. New York City*, 882 F. Supp. 2d 412, 426 (S.D.N.Y.

2011) (ADA and Rehabilitation Act); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154-55

(E.D.N.Y. 2010) (ADA and Rehabilitation Act); *see also Dean v. Univ. at Buffalo Sch. of*

*Medicine and Biomedical Scis.*, 804 F.3d 178, 185 (2d Cir. 2015) (noting that the plaintiff had

conceded that "neither the ADA nor the Rehabilitation Act permit claims against state officials in

their individual capacities").

Consequently, Plaintiff's claims against the individual Defendants in their personal

capacity under the ADA and Rehabilitation Act must necessarily be dismissed. The Court notes

that, contrary to Plaintiff's argument in his opposition memorandum of law, this finding is not in

any way impacted by *Ex parte Young* because it is not based on Eleventh Amendment immunity,

but rather on what causes of action are permitted to be brought under the statutes themselves.

Whether these claims survive against the individual Defendants in their official capacities and

personal capacities are two separate questions, and Plaintiff has offered no legal authority

permitting the Court to allow these claims to stand against the individual Defendants in their

personal capacities. As a result, the Court finds that allowing amendment of the Complaint in

this respect would be futile, and, to the extent that the Court has found in this Decision and Order

that amendment of the Complaint is otherwise permissible, the First, Second, Third, Fifth, Sixth,

and Seventh Claims against Defendants Pomerance, Evans, Fishbein, Chakot, and Guinane in

their personal capacities as asserted in the proposed Second Amended Complaint are dismissed.

### C. Whether Plaintiff Has Stated Claims for Discrimination

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law and reply memorandum of law (*see, supra,* Parts I.B.1. and 1.B.3. of this Decision and Order), but finds that Plaintiff should be granted leave to amend the Complaint through the factual allegations asserted in the proposed Second Amended Complaint.

To establish a prima facie case of discrimination under the ADA, the plaintiff must show five factors: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by the employer; (3) he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodations; (4) he suffered an adverse employment action; and (5) the adverse employment action was imposed because of his disability. *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Davis v. New York City Dept. of Educ.*, 804 F.3d 231, 235 [2d Cir. 2015]). However, "a plaintiff is not required to plead a prima facie case . . . to defeat a motion to dismiss," but rather, with respect to discriminatory intent in particular, "need only give plausible support to a minimal inference of discriminatory motivation." *Dooley*, 636 F. App'x at 21 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 [2d Cir. 2015]).

"Employment actions that [the Second Circuit has] deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or indices . . . unique to a particular situation," or a denial of a transfer with a proffer of an objective indicia of material disadvantage. *Beyer v.*

*Cnty of Nassau*, 524 F.3d 160, 163-64 (2d Cir. 2008) (internal quotation marks omitted); *see Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (noting that a plaintiff suffers an adverse employment action when "he or she endures a 'materially adverse change' in the terms and conditions of employment") (abrogated on other grounds). A failure to promote can also constitute an adverse employment action. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("Treglia's claim of discriminatory failure to promote falls within the core activities encompassed by the term 'adverse actions.'"). "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya*, 202 F.3d at 640.

### 1.     The Complaint

Defendants argue that Plaintiff's Complaint does not state a claim for discrimination under the ADA because it has failed to allege facts plausibly suggesting that he suffered any adverse employment action, in particular through Defendants' alleged failure to promote him. *See supra*, Part I.B.1. of this Decision and Order. In the Complaint, Plaintiff alleges the following: (a) he began his employment with Defendant DVA as a Grade 23 Project Manager 1; (b) he did not receive a promotion in the five years he had been employed with Defendant DVA at the time of the Complaint; (c) over those five years, other employees who are not disabled veterans received promotions, including (i) Jason Chakot, who was promoted from Senior Training Technician to Associate Training Technician in 2013 and from Associate Training Technician to Deputy Director of Administration in October 2018, (ii) Paul Romesser, who was promoted from Veterans Benefit Advisor 2 to Associate Training Technician, although Romesser did not function as a Associate Training Technician during much of his time in that position, (iii)

Shannon MacColl, who was promoted from Excelsior Service Fellow to Director of Public Information in August 2018, and (iv) various other employees who were promoted to new positions and titles "specifically and obscurely designed for them"; (d) he had been given repeated assurances from Defendant Pomerance, Defendant Evans, and former director Hesse that he merited a promotion; and (e) he has been progressively given additional responsibilities without a commensurate promotion. (Dkt. No. 1, at ¶¶ 100-14 [Pl.'s Compl.].)

The above allegations do not plausibly suggest that Defendants' alleged failure to promote Plaintiff constituted an adverse action. Although Plaintiff alleges that he was told he deserved a promotion, he has not alleged that he ever actually applied for any promotions, whether for the positions he alleges were given to other employees or for any other position. Additionally, as to Plaintiff's failure to allege facts about whether he actually applied for any relevant promotions, even if other employees received promotions designed specifically for them as Plaintiff alleges, he does not allege that those employees were simply given those promotions without applying for them. *See Dawson v. New York City Transit Auth.*, 624 F. App'x 763, 768 (2d Cir. 2015) (finding that allegations regarding the "extensive steps" the plaintiff had taken to be restored to his higher-paying position as a train operator were sufficient to allege that he applied for that promotion); *Perez v. New York City Dept. of Edu.*, 15-CV-7156, 2017 WL 4122702, at *9 (S.D.N.Y. Aug. 2, 2017), adopted by 2017 WL 4129637 (S.D.N.Y. Sept. 15, 2017) (recommending dismissal of disparate treatment claim in part because the plaintiff had failed to allege an adverse action on the basis of failure to promote in that he did not allege that "any position existed for which he applied and was qualified or that he was rejected by DOE for such position or that the position was kept open and DOE continued seeking applicants").

Consequently, whether or not the application process for those jobs was fair or opened up to Plaintiff, his failure to allege that he applied for any of the promotions (or even made informal requests to be considered for the promotions) that were given to the alleged similarly situated non-disabled employees or any other promotion is fatal to his argument that failure to promote was an adverse action; his lone allegation that he was told that he deserved a promotion is simply not sufficient. Nor has Plaintiff alleged that he was qualified for the positions to which the other identified employees were promoted or identified other positions that had been made available for which he was qualified. Consequently, the Complaint does not allege facts plausibly suggesting that Plaintiff suffered an adverse action as the result of any failure to promote.

Other potential adverse actions that Plaintiff has alleged (e.g., Defendants subjecting his behavior to microscopic scrutiny, Defendant Evans ignoring him, Defendants failing to notify him when a new administrative assistant was hired, Defendants making it difficult for him to receive reasonable accommodations, and/or Defendants denying him a printer and scanner in his office) do not rise to the level of an adverse action. The allegations in the Complaint simply do not plausibly suggest that these actions, while inconvenient or annoying, rose to the level of being so significantly disadvantageous that they materially altered the terms and conditions of his employment.

Lastly, Plaintiff's allegations related to Defendants allegedly giving him additional duties that were not within his job description do not plausibly suggest an adverse action. Granted, assignment of duties outside of the scope of an employee's position may constitute an adverse action in some instances. *See Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015) (finding plaintiff had plausibly alleged an adverse action where she

alleged that labor-intensive tasks she was assigned were outside of the scope of her job description).  However, Plaintiff has alleged merely that he was told he would be taking on "additional job duties" without "commensurate promotion," without providing any allegations to suggest (a) what those duties were, or (b) whether or how they were outside of his job description.  (Dkt. No. 1, at ¶¶ 100, 111-15 [Pl.'s Compl.].)

For all of the above reasons, the Court finds that Plaintiff's Complaint has failed to state a claim for disability discrimination under the ADA.

## 2.    The Proposed Second Amended Complaint

Having found that Plaintiff has failed to state a claim for disability discrimination under the ADA in the Complaint, the Court must determine whether allowing Plaintiff to substitute the proposed Second Amended Complaint for the Complaint would be futile.

Related to the incident of November 16, 2017, Plaintiff adds the following factual allegations in his proposed Second Amended Complaint: (1) Defendants Evans and Pomerance confirmed that Plaintiff had not said or done anything inappropriate in the meeting of November 13, 2017; (2) Defendant Fishbein had become aware of Plaintiff's status as a veteran with PTSD well before the meeting of November 13, 2017, after he observed Plaintiff's handwashing behaviors in a bathroom; and (3) Defendant Fishbein had himself advocated DVA's policy of thorough handwashing after using the bathroom.  (Dkt. No. 19, Attach. 1, at ¶¶ 74-77 [Pl.'s Proposed Second Am. Compl.].)  Related to his discrimination claim, Plaintiff has also added that Defendant Evans stated in a September 2017 meeting that "I never know which Todd is going to walk in the door" with respect to Plaintiff, but that Plaintiff has never behaved in a manner that would give Defendant Evans reason to make such a statement about him.  (*Id.* at ¶¶

88-89 [Pl.'s Proposed Second Am. Compl.].)

Additionally, Plaintiff has added the following allegations related to conduct occurring after commencement of his lawsuit: (1) on December 20, 2018, GOER issued a decision regarding Plaintiff's grievance, finding that Plaintiff had been made to perform duties outside of his job title and that Plaintiff's job performance was more appropriately characterized as Associate Administrative Analyst than as Project Manager 1; (2) the GOER decision directed Defendants to cease and desist from assigning Plaintiff any further out-of-title work, but did not direct Defendants to increase his grade level, his compensation, or grant back pay; (3) Defendants have failed to implement GOER's decision and have placed undue burdens on Plaintiff as a condition of implementing that decision by (i) directing him to complete a N.Y. Civ. Serv. L. § 55 application and disclose protected health information despite the fact that such application is not a requirement for reclassification of his position and the fact that other employees were not required to complete the application, and (ii) taking job responsibilities from employees of a higher grade level and giving them to Plaintiff without any promotion, pay increase, or additional support; (4) Defendants have, on numerous occasions, intimidated Plaintiff and threatened his job by "repeatedly accusing [him] of insubordination" when he sought clarification of Defendants' orders, and, in particular, on March 4, 2019, proposed Defendant Chakot issued an unwarranted counseling memo against Plaintiff charging him with insubordination, which was later withdrawn on March 21, 2019; (5) on April 9, 2019, proposed Defendant Chakot told Plaintiff he needed to keep his office door open during work hours, an order that was not given to other non-disabled employees and that Plaintiff alleges violates his reasonable accommodation permitting him to work in an environment without noise or

distractions; (6) on April 17, 2019, Plaintiff was placed on indefinite administrative leave with pay that included restrictive requirements such as needing to remain in his residence between the hours of 8:30 a.m. and 4:30 p.m. without approval and forbidding him from associating with DVA employees or accessing the DVA workplace; (7) the restrictions exacerbated Plaintiff's disability, were not imposed on non-disabled employees, and were in bad faith; (8) on April 25, 2019, Defendants (including proposed Defendant Guanine) suspended Plaintiff without pay, and, at a meeting on the same date, proposed Defendant Guanine admitted that he was working at the direction of the other Defendants in carrying out this action; and (9) on April 29, 2019, Defendants issued a notice of discipline seeking termination of Plaintiff's employment. (Dkt. No. 19, Attach. 1, at ¶¶ 141-86 [Pl.'s Proposed Second Am. Compl.].)

As to the additional allegations related to conduct occurring before the filing of Plaintiff's Complaint, the Court finds that these allegations do not remedy the defects identified in the Complaint pertaining to alleging an adverse action. In particular, Plaintiff has not offered any further factual allegations regarding what efforts he took to seek a promotion or in what way Defendants affirmatively denied him a promotion. As to Plaintiff's post-Complaint allegations regarding the GOER decision, those allegations do not plausibly suggest that Plaintiff was denied a promotion to which he was entitled; rather, Plaintiff's own allegations indicate that the GOER decision found that, although he was entitled to a title reclassification, he was not entitled to a promotion to Grade 25 Project Manager 2 as he had requested in his grievance. (Dkt. No. 19, Attach. 1, at ¶¶ 143-47 [Pl.'s Proposed Second Am. Compl.].) Plaintiff's proposed Second Amended Complaint therefore does not allege facts plausibly suggesting that Defendants' alleged failure to promote him constitutes an adverse action for the purpose of his discrimination claim,

nor have the pre-Complaint proposed amendments plausibly suggested any other adverse action.

However, Plaintiff has also alleged that, after he filed his Complaint, Defendants engaged in progressive effort to terminate his employment, first placing him on paid administrative leave on April 17, 2019, then suspending him without pay on April 25, 2019, and finally issuing a notice of discipline seeking his termination on April 29, 2019. (Dkt. No. 19, Attach. 1, at ¶¶ 161-62, 182-84 [Pl.'s Proposed Second Am. Compl.].) Although a suspension with pay might not, without more, constitute an adverse employment action, disciplinary proceedings that result in a suspension without pay can constitute an adverse employment action. *Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 169 (E.D.N.Y. 2015); *see Canady v. Union 1199*, 253 F. Supp. 3d 547, 558 (W.D.N.Y. 2017) (finding that, "[g]enerally, 'administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action'" as long as the defendant does not take actions beyond the employee's normal exposure to disciplinary policies) (quoting *Joseph v. Leavitt*, 465 F.3d 87, 91 [2d Cir. 2006]); *St. Juste v. Metro Plus Health Plus*, 8 F. Supp. 3d 287, 306 (E.D.N.Y. 2014) (finding that plaintiff's temporary suspension without pay was an adverse employment action). Therefore, although Plaintiff has not alleged that the April 29, 2019, notice of discipline actually resulted in termination of his employment, his allegation that he was placed on a temporary suspension without pay plausibly suggests, for the purposes of this motion, that he suffered an adverse action. The Court notes that, at this point, it is not clear how long Plaintiff was suspended without pay, whether he remains suspended without pay, or whether his employment was eventually terminated. However, such gaps in the allegations do not undermine the plausibility of Plaintiff's allegations because even short periods of suspension without pay have been found

to be sufficient to constitute an adverse action. *See Redd v. New York State Div. of Parole*, 07-CV-0120, 2010 WL 1177452, at *10 (E.D.N.Y. Mar. 2, 2010) (finding that plaintiff's two-week suspension without pay constituted an adverse action), *adopted in relevant part by* 2010 WL 1177435 (E.D.N.Y. Mar. 24, 2010), *rev'd on other grounds* 678 F.3d 166 (2d Cir. 2012); *Satterfield v. United Parcel Serv., Inc.*, 00-CV-7190, 2003 WL 22251314, at *10-11 (S.D.N.Y. Sept. 30, 2003) (assuming that a one-day suspension without pay was an adverse employment action, noting that it "arguably does fall within the Second Circuit's definition of 'materially adverse' action since plaintiff presumably was forced to forego one day's worth of wages").

Having concluded that Plaintiff's proposed Second Amended Complaint alleges facts plausibly suggesting an adverse action, the Court must consider whether it also alleges facts plausibly suggesting that his suspension was caused by his disability. After carefully considering the matter, the Court finds that the allegations sufficiently "give plausible support to a minimal inference of discriminatory motivation" as required to survive a motion to dismiss. *Dooley*, 636 F. App'x at 21. Although Defendants argue that Plaintiff has not alleged facts plausibly suggesting that the suspension occurred as a result of discrimination (as opposed to occurring "as disciplinary measures in response to Plaintiff's own insubordination"), the proposed Second Amended Complaint does not contain any factual allegations regarding any insubordination. Rather, Plaintiff alleges that the counseling memo of March 4, 2019, was withdrawn by Defendants following Plaintiff's filing of a grievance through his union, and the proposed Second Amended Complaint does not indicate that Plaintiff refused to comply proposed Defendant Chakot's April 9, 2019, order to keep his door open during working hours. Given that the Court must rely on the factual allegations in the proposed Second Amended Complaint on

this motion, and that the proposed Second Amended Complaint does not plausibly suggest that Plaintiff was actually insubordinate, the Court cannot say that Plaintiff has failed to allege facts plausibly suggesting that the reason for Defendants' actions was his disability. Of course, Defendants will be entitled to present any evidence of insubordination at later stages of this proceeding; but, on this motion to dismiss, Plaintiff's claims of disability discrimination should be permitted to proceed.

For all of the above reasons, the Court finds that granting Plaintiff leave to amend the Complaint on his discrimination claims (under both the ADA and the Rehabilitation Act) would not be futile, and therefore it grants him such leave.

**D.     Whether Plaintiff Has Stated Claims for a Hostile Work Environment**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law, and finds that Plaintiff's proposed amendments to the Complaint as to these claims would be futile. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.

As an initial matter, the Court notes that the Second Circuit has recently confirmed that hostile-work-environment claims are cognizable under the ADA. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) ("[W]e hold that hostile work environment claims are cognizable under the ADA.").

To establish a prima facie case of hostile work environment, the plaintiff must show that "the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment." *Montanez v. McDean LLC*, 770 F. App'x 592, 594 (2d Cir. 2019) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 [2d Cir.

2004]). Plaintiff must also show that the hostile conduct occurred because of a protected characteristic. *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive. . . . [T]he test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Montanez*, 770 F. App'x at 594. In assessing whether the conduct is severe or pervasive enough to create a hostile work environment, courts must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work." *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

### 1. The Complaint

In his Complaint, Plaintiff alleges that he was subjected to a hostile work environment in the following ways: (a) Defendants generally subjected to his behavior to "microscopic scrutiny" because of his PTSD and interpreted his innocuous conduct as instability; (b) on November 16, 2017, Defendants Fishbein and Pomerance "chastised, reprimanded, and threatened" him because of a comment he made at a staff meeting on November 13, 2017; (c) on November 16, 2017, Defendant Fishbein sent an email to "numerous persons at ITS and DVA" apologizing for the fact that Plaintiff's behavior at the November 13, 2017, meeting made them uncomfortable, though Plaintiff denies that he engaged in any behavior that made anyone uncomfortable or

merited an apology; (d) Plaintiff has attended meetings by telephone conference rather than in person as a result of Defendant Fishbein's statements in the November 16, 2017, email; (e) on November 16, 2017, Defendant Pomerance stated to Plaintiff that "perhaps going forward [Plaintiff] should tell people in meetings, when the meetings start, that [Plaintiff] has a disability requiring [him] to get up and move and stretch," conduct which was related to Plaintiff's reasonable accommodation to sit or stand interchangeably at his workstation; (f) Defendant Evans ignored and refused to acknowledge Plaintiff for about two years despite a supervisor directing Defendant Evans to acknowledge him; (g) on November 16, 2017, Defendant Pomerance suggested to Plaintiff that he could look for another job because he might be happier in the private sector, in response to Plaintiff's report at a meeting that day that he felt singled out for reprimand because of his disability; (h) on March 9, 2018, a new administrative assistant was hired and no one notified Plaintiff of that fact; (i) throughout 2017 and 2018, Defendants Evans and Pomerance made it difficult for Plaintiff to receive various reasonable accommodations; (j) Defendant Evans told Plaintiff he did not need his own printer and scanner although those items had already been approved by Defendant Pomerance; and (k) Defendants failed to give Plaintiff a promotion at any time in the five years he worked at Defendant DVA. (Dkt. No. 1, at ¶¶ 40-114 [Pl.'s Compl.].)

These allegations are insufficient to state a claim for hostile work environment. Of the specific incidents Plaintiff alleges, the majority of them occurred on or about the same date (November 16, 2017) as a result of the same November 13, 2017, meeting, and many of the other allegations are either discrete incidents, not overtly related to his disability, or vague as to the details of the alleged conduct (e.g., how many times and in what way Defendants Pomerance and

Evans made it difficult for Plaintiff to obtain requested reasonable accommodations, and the details of the alleged denials for promotion including how many jobs for which he applied and when the application and/or denial occurred). The Court cannot say that the pattern of events alleged in the Complaint in this case arises to the level "that a reasonable employee would find the conditions of [his] employment altered for the worse." *Montanez*, 770 F. App'x at 594. Of note, although Plaintiff alleges generally that these actions impacted his ability to perform his job, he has provided no factual allegations as to how his ability to perform his job was impacted in a legally significant way by attending meetings by telephone conference (presumably voluntarily), not being acknowledged by Defendant Evans, not being informed of the new administrative assistant, and/or being denied his own personal printer and scanner.[2] He also does not provide factual allegations as to how the alleged difficulties in obtaining reasonable accommodations impacted his ability to perform his job. His allegations that he suffered "significant mental, emotional, and physical anguish" as a result of Defendants' conduct and felt like he had to "walk on eggshells" in the workplace simply do not rise to the level of an objectively hostile work environment. *See Salas v. New York City Dept. of Investigation*, 298 F. Supp. 3d 676, 684-85 (S.D.N.Y. 2018) (finding that plaintiff had plausibly stated a claim for hostile work environment under the ADA where she alleged that a defendant co-employee made fun of and imitated her stutter on a daily basis, including at least one instance where she did so in

---

[2]     In particular, Plaintiff does not allege that Defendant Evans was his direct supervisor or that he required contact with Defendant Evans (who was serving as Executive Deputy Director) to do his job, he does not allege that he was prevented from utilizing the new administrative assistant once he learned of her presence or that he was unable to perform his job before that administrative assistant arrived, and he does not allege that he was denied access to any printer or scanner in a way that prevented him from performing his job.

front of other coworkers); *Harvin v. Manhattan and Bronx Surface Transit Operating Auth*, 14-CV-5125, 2016 WL 11318241, at *10 (E.D.N.Y. Mar. 3, 2016) (finding plaintiff failed to alleged facts plausibly suggesting a hostile work environment where she alleged that she was assigned a heavy workload, denied proper training, resources and assistance needed to perform her work, was subjected to false character attacks and accusations that she was a bad employee, faced several instances where she felt offended or demeaned, and had two disagreements with another employee where she felt threatened) *adopted by* 2018 WL 1603872 (E.D.N.Y. Mar. 30, 2018); *Giambattista v. American Airlines, Inc.*, 5 F. Supp. 3d 284, 294-95 (E.D.N.Y. 2014) (finding that plaintiff failed to state a claim for hostile work environment through allegations that coworkers made offensive quips about her perceived disability, including calling her crazy and implying that she should be taken away by psychiatrists, and that she was groped on one occasion).

Additionally, Plaintiff has not alleged facts plausibly suggesting that the alleged actions creating the hostile work environment were causally related to his disability. Of note, the only actions and statements tangibly related to Plaintiff's disability are those related to the meeting of November 13, 2017 (based on Defendant Pomerance's statement suggesting that Plaintiff inform others of his disability before meetings and the connection between his alleged outburst at the meeting and the alleged workplace perception of him as unstable), and all such actions and statements occurred on the same day, November 16, 2017. The Court cannot say that Plaintiff's factual allegations plausibly suggest that this collection of comments on a single day constitute a sufficiently severe episode to constitute a hostile work environment, and Plaintiff has not alleged further facts to plausibly suggest that the other alleged actions (i.e., Defendant Evans ignoring him, Defendants failing to inform him of the new administrative assistant, Defendants actions

36

making it difficult for him to receive reasonable accommodations, Defendants preventing him from getting a personal printer and copier, and Defendants failing to promote him) were taken specifically because of Plaintiff's disability.

For all of the above reasons, the Court finds that Plaintiff's Complaint has failed to state a claim for hostile work environment under the ADA.

### 2.    The Proposed Second Amended Complaint

Having found that Plaintiff has failed to state a claim for hostile work environment under the ADA in the Complaint, the Court must determine whether allowing Plaintiff to substitute the proposed Second Amended Complaint for the Complaint would be futile.

Related to his hostile work environment claim, Plaintiff adds in the proposed Second Amended Complaint that Defendant Evans stated in a September 2017 meeting that "I never know which Todd is going to walk in the door" (with respect to Plaintiff), but that Plaintiff has never behaved in a manner that would give Defendant Evans reason to make such a statement about him. (Dkt. No. 19, Attach. 1, at ¶¶ 88-89 [Pl.'s Proposed Second Am. Compl.].) This additional allegation does not cure the deficits identified above related to Plaintiff's Complaint because it does not raise the totality of the alleged circumstances to the level of a hostile work environment.

Plaintiff has additionally added the following allegations related to conduct occurring after commencement of his lawsuit: (1) Defendants failed to comply with the GOER decision as discussed previously by continuing to assign him duties outside of his job description and directed him to complete a N.Y. Civ. Serv. L. § 55c application and disclose protected health information; (2) Defendant have "intimidated and threatened" his job on "numerous occasions";

(3) on March 4, 2019, proposed Defendant Chakot issued a counseling memo against Plaintiff that was later withdrawn on March 21, 2019; (4) proposed Defendant Chakot ordered Plaintiff to keep his office door open during work hours despite Plaintiff's reasonable accommodation for a work environment without noise or distractions; and (5) Defendants first placed him on paid administrative leave with "house arrest" conditions, then suspended him without pay before issuing a notice of discipline seeking termination of his employment.  (Dkt. No. 19, Attach. 1, at ¶¶ 141-84 [Pl.'s Proposed Second Am. Compl.].)

These additional allegations do not remedy the defects identified in the original Complaint.  In particular, Plaintiff's allegations do not plausibly suggest that requiring him to file a N.Y. Civ. Serv. L. § 55-c application was harassment based on his disability because (a) he has not alleged that his position was one that is not covered by that statute, and (b) his allegation that no similarly situated employees were required to file an application for transfers does not plausibly suggest that Defendants' action was motivated by discriminatory bias based on Plaintiff's disability because he has not alleged that any of his coworkers are disabled (or veterans) and thus has not alleged facts plausibly suggesting that they would ever be required to file a N.Y. Civ. Serv. L. § 55-c application.  *See* N.Y. Civ. Serv. L. § 55-c (indicating that, once a certain position is classified in the noncompetitive class as a position that a disabled veteran can perform, veterans seeking the position must "establish by appropriate documentary evidence that they are disabled veterans").  Additionally, Plaintiff's allegation that Defendants intimidated him and threatened his job on numerous occasions is simply too vague to indicate what conduct Plaintiff was subjected to and in what frequency.

Plaintiff's remaining additional allegations (i.e., that Defendants continued to assign him

unspecified duties that had previously been assigned to some of the Defendants, filed a counseling memorandum against him that was later withdrawn when Plaintiff submitted a grievance, directed him to keep his office door open, and suspended him, first with pay and then without pay, before seeking termination of his employment) do not, when combined with the allegations in the Complaint, plausibly suggest a hostile work environment. In particular, the totality of the actions do not plausibly suggest a severe and pervasive pattern of conduct that objectively and materially altered the conditions of Plaintiff's employment, nor has Plaintiff alleged facts plausibly suggesting that these actions were taken as a result of his disability. Notably, Plaintiff's allegations related to the assignment of additional duties appear to be based on retaliation and an attempt to "overwhelm" him to force him from his job, without any inference that his disability was Defendants' motivation. Similarly, Plaintiff makes no allegations to plausibly suggest that the counseling memorandum was issued because of his disability, and his generic statements that Defendants did not require non-disabled employees to keep their doors open or place other non-disabled employees on restrictive "house arrest" suspension are unsupported by any factual allegations (particularly as to what "similarly situated" employees Plaintiff is referring to and how those employees were treated in a similar situation) that would raise these statements to a level of plausibility.

For the above reasons, the Court finds that granting Plaintiff leave to amend the Complaint on his hostile work environment claims (under both the ADA and the Rehabilitation Act) would be futile. Accordingly, the Court denies Plaintiff's request for leave to amend the Complaint as to these claim and finds that dismissal of these claims is appropriate.

### E. Whether Plaintiff Has Stated Claims for Retaliation

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law and reply memorandum of law, and finds that Plaintiff's proposed amendments to the Complaint as to these claims would be futile. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.

To establish a prima facie case of retaliation, the plaintiff must show the following four elements: (1) he engaged in activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) there is a causal connection between the alleged adverse action and the protected activity. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

Unlike a claim for substantive discrimination, to show an adverse action on a claim for retaliation, the proper question is not whether the terms and conditions of the plaintiff's employment were actually changed, but "whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43-44 (2d Cir. 2019). As such, the definition of what qualifies as an adverse action for the purpose of a retaliation claim is broader than for a discrimination claim. *See Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 439-40 (E.D.N.Y. 2015) (noting that, for a retaliation claim, the plaintiff must allege that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

Additionally, as to causation, "[a] retaliatory purpose can be shown indirectly by timing:

protected activity followed closely in time by adverse employment action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.d 72, 90 (2d Cir. 2015). However, the passage of more than two months between the protected activity and the adverse employment action has generally been held to not allow for an inference of causation. *Baldwin v. Goddard Riverside Cmty Ctr.*, 53 F. Supp. 3d 655, 669-70 (S.D.N.Y. 2014) (collecting cases). Additionally, it is not sufficient to allege that the retaliation was a substantial or motivating factor in the employer's decision, but rather the plaintiff must plausibly allege that retaliation was the "but-for" cause of the adverse employment action, i.e., that the adverse action "would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90-91.

Additionally, because a plaintiff pursuing a retaliation claim under the ADA need not allege that he was actually disabled within the meaning of the ADA, "prevailing on the disability discrimination claim under the ADA is not a prerequisite to prevailing on a retaliation claim under the ADA." *Vale*, 80 F. Supp. 3d at 439; *Treglia*, 313 F.3d at 719 ("A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful 'so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'").

### 1.    The Complaint

In the Complaint, Plaintiff alleges that he engaged in protected activity in the form of (1) reporting to Defendant Pomerance that he felt he was being singled out for reprimand because of his disability during a meeting on November 16, 2017, and (2) filing a verified complaint with the New York State Division of Human Rights alleging discrimination on December 20, 2017. (Dkt. No. 1, at ¶¶ 81-84 [Pl.'s Compl.].) He makes the following allegations of retaliation as a

result of these activities: (1) Defendant Pomerance suggested to him that "perhaps [he] could look for another job, where [he] would be happier, perhaps in the private sector" or words to that effect; (2) Defendants "intensified" their practice of excluding Plaintiff from certain information, including not telling him when a new administrative assistant began working at the DVA on March 9, 2018; (3) Defendants Evans and Pomerance made it difficult for Plaintiff to receive requested reasonable accommodations throughout 2017 and 2018; (4) on October 17, 2018, Defendant Evans told Plaintiff that he did not think Plaintiff needed his own printer and scanner despite the fact Defendant Pomerance had approved those items on September 28, 2018; (5) Plaintiff did not receive any promotion in his five years working at the DVA, while other employees were promoted in 2018; and (6) on October 18, 2018, Defendant Evans assigned Plaintiff additional duties without any promotion or pay increase. (*Id.* at ¶¶ 81-114.)

Having considered the above allegations, the Court finds that Plaintiff's Complaint has not alleged facts plausibly suggesting that he suffered any adverse action, even under the less-demanding standard of a retaliation claim. The Court cannot say that any of the above actions would have dissuaded a reasonable employee from complaining of discrimination.

Additionally, Plaintiff has not alleged facts plausibly suggesting that the actions were taken in retaliation for his alleged protected activity. As an initial matter, Plaintiff has not pointed to any statements in which Defendants expressed, directly or indirectly, a retaliatory motivation. Plaintiff also has not alleged facts plausibly suggesting retaliatory motive based on temporal proximity. In particular, the Court finds as follows: (a) as to Defendant Pomerance's alleged statement that Plaintiff might be happier working somewhere else, although this alleged statement occurred close in time to Plaintiff's complaint that he felt he was being singled out due

to his disability, it would not, without any more tangible threat or action, qualify as an adverse action; (b) Plaintiff's allegations about the new administrative assistant, his printer and scanner, and assignment of additional duties all occurred three or more months after the alleged protected activity and thus no reasonable inference of retaliatory motive can be drawn based on temporal proximity; (c) Plaintiff alleges that he was denied promotions both before and after engaging in the protected conduct, which does not plausibly suggest that his protected conduct was the reason for the failure to promote; and (d) Plaintiff's allegation that Defendants made it difficult for him to obtain reasonable accommodations in "2017 and 2018" is too vague to plausibly suggest a temporal connection between these actions and the protected activities.

For all of the above reasons, the Court finds that Plaintiff's Complaint has failed to allege facts plausibly stating a claim for retaliation under the ADA.

## 2. The Proposed Second Amended Complaint

Having found that Plaintiff has failed to state a claim for retaliation under the ADA in the Complaint, the Court must determine whether allowing Plaintiff to substitute the proposed Second Amended Complaint for the Complaint would be futile.

Related to his retaliation claim, Plaintiff alleges another potential protected activity: on December 20, 2018, GOER rendered a decision on his previously filed grievance that found that Plaintiff had been made to perform work that was not part of his job responsibilities, that his job title should be reclassified from Project Manager 1 to Associate Administrative Analyst, and that Defendants should refrain from assigning any further out-of-title work to him. (Dkt. No. 19, Attach. 1, at ¶¶ 141-47 [Pl.'s Proposed Second Am. Compl.].) Plaintiff alleges that, following this decision, Defendants did the following: (a) failed to implement GOER's decision until April

1, 2019; (b) inappropriately made him complete a N.Y. Civ. Serv. L. § 55-c application as a condition of reclassifying his job title; (c) re-assigned job responsibilities to him from employees with jobs at higher grade levels than Plaintiff's job; (d) repeatedly accused him of insubordination, including through the filing of a counseling memorandum of law on March 4, 2019 (which was later withdrawn after Plaintiff filed a grievance in response to the counseling memorandum); (e) on April 9, 2019, directed him to keep his office door open during work hours despite his reasonable accommodation for a work environment without noise or distractions; (f) on April 17, 2019, placed Plaintiff on administrative leave with pay that included "house-arrest" conditions; (g) on April 25, 2019, suspended Plaintiff without pay; and (h) on April 29, 2019, issued a Notice of Discipline seeking termination of Plaintiff's employment. (*Id.* at ¶¶ 151-84.)

As discussed above in relation to Plaintiff's claims for disability discrimination, at the very least, Plaintiff's allegations about suspension without pay qualify as an adverse employment action.

However, the Court finds that Plaintiff has not alleged facts plausibly suggesting that there was a causal connection between any of the alleged protected activity and the alleged adverse employment actions. As an initial matter, the Court finds that Plaintiff has not alleged sufficient facts to plausibly suggest that the grievance he filed with GOER constituted protected activity. The proposed Second Amended Complaint contains few factual allegations about the grievance itself, stating only that it was an "out-of-title" grievance and that, in it, Plaintiff contended that he had been performing duties outside of his job title and that he should therefore be promoted in accordance with his performance of those additional duties. (Dkt. No. 19, Attach. 1, at ¶¶ 142-43 [Pl.'s Proposed Second Am. Compl.].) Plaintiff therefore has not alleged

facts plausibly suggesting that his GOER grievance opposed discrimination or other relevant unlawful conduct related to his disability. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to an action taken to protest or oppose statutorily prohibited discrimination."). As a result, the only alleged protected activities remain those identified previously: (1) reporting to Defendant Pomerance that he felt he was being singled out for reprimand because of his disability during a meeting on November 16, 2017, and (2) filing a verified complaint with the New York State Division of Human Rights alleging discrimination on December 20, 2017.[3]

As with the previous allegations in the Complaint, Plaintiff has not alleged in the proposed Second Amended Complaint that Defendants made any overt statements or other indications that plausibly suggest that their alleged conduct after the filing of the Complaint was motivated by Plaintiff's protected activity. Nor has Plaintiff alleged any other facts to plausibly suggest retaliatory motive beyond conclusory assertions that Defendants had not engaged in similar actions against unidentified similarly situated coworkers who had not engaged in protected activity, which, as already discussed, are insufficient. Additionally, the newly alleged conduct did not occur until 2019, more than a year after Plaintiff filed his complaint with the New York State Division of Human Rights, and, as a result, there is no reasonable inference of retaliatory motive based on temporal proximity. Consequently, the Court finds that Plaintiff has failed to allege facts plausibly suggesting causation between his protected activity and the alleged adverse actions.

---

[3] Plaintiff also has not alleged that the filing of this action constituted a protected activity as to any of the new allegations in the proposed Second Amended Complain related to Defendants' conduct occurring after the date on which the Complaint was filed.

For the above reasons, the Court finds that granting Plaintiff leave to amend the Complaint on his retaliation claims (under both the ADA and the Rehabilitation Act) would be futile. Accordingly, the Court denies Plaintiff's request for leave to amend the Complaint as to these claim and finds that dismissal of these claims is appropriate.

**F.     Whether Plaintiff Has Stated a Claim for Defamation Under New York Law**

Having found that Plaintiff's proposed Second Amended Complaint alleges facts plausibly suggesting at least one of his federal claims, the Court finds it appropriate to exercise supplemental jurisdiction over Plaintiff's state law defamation claim, and consequently will consider the merits of that claim.

A claim of defamation under New York law requires the plaintiff to prove four elements: "(1) a false statement that is (2) published to a third party; (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Elais v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017).

The only apparent basis in the Complaint for Plaintiff's defamation claim is Defendant Fishbein's email of November 16, 2017, regarding the meeting of November 13, 2017. (Dkt. No. 1, at ¶¶ 46-55 [Pl.'s Compl.].) Plaintiff does not include factual allegations as to the specific statements made in that email or who it was sent to, alleging only that (a) it was sent to "numerous persons" at ITS and Defendant DVA, and (b) Defendant Fishbein was "'apologizing' on behalf of plaintiff for the way 'most, if not all, of you were uncomfortable' by plaintiff's alleged wrongful behavior." (*Id.* at ¶ 51.) Defendants attached a copy of the email to their memorandum of law, which the Court finds it may consider even though it is extrinsic evidence because (a) the email is integral to, and incorporated by reference in, Plaintiff's Complaint, and

(b) although Plaintiff argues that the Court should not consider the email, he does not dispute its authenticity.[4] (Dkt. No. 8, Attach. 1, at 4.) *See also supra*, note 1 of this Decision and Order.

Even assuming that Plaintiff's allegation that the email was sent to numerous persons is sufficient to plausibly suggest publication for the purposes of a motion to dismiss, the Court finds that the email itself contradicts Plaintiff's allegations that the email contained a defamatory and false statement about him. The email states the following:

> On behalf of DVA, I apologize for how Adam Brown was abruptly cut off during Monday's meeting, and how that meeting ended. DVA knows of all that each of you do to get DVA what our agency needs to provide services to our Veteran clients and their families. I recognize that most, if not all, of you were uncomfortable with that manner in which the lack of a workable ITS/DVA MOU was raised. While DVA is frustrated with the MOU situation, we fully recognize that this issue is not the fault of any of you, and we should not have addressed that issue with you as if the MOU was something in your control. DVA appreciated all that you do and going forward we will do our best to more appropriately express out concerns.

Plaintiff alleges that Defendant Fishbein's statements in this email are false and defamatory because (a) he "made a comment that was neither offensive nor inappropriate" at the relevant meeting, and (b) he did not use any strong or inappropriate language or conduct himself in any manner that would warrant an apology. (Dkt. No. 1, at ¶¶ 46-55 [Pl.'s Compl.].)

The Court notes that, despite Plaintiff's above allegations, he does not make any allegations that he did not in fact cut off Mr. Brown or did not raise the unspecified issue referred to in Defendant Fishbein's email, and thus has not alleged facts plausibly suggesting that these

---

[4] However, the Court need not, and in fact must not, consider the email from Plaintiff's union to Defendant Fishbein that Plaintiff seeks to have considered. Unlike Defendant Fishbein's email, this union email does not meet any of the recognized conditions for allowing consideration of extrinsic evidence on a motion to dismiss.

statements are false; rather, he merely disagrees with Defendant Fishbein's assessment that the conduct warranted an apology. Such disagreement does not make the underlying statements in the email that certain conduct occurred false. Rather, whether Plaintiff's conduct was appropriate is more properly characterized as a matter of opinion than a matter of fact, and opinions are not actionable under New York law. The Court notes that, in alleging that his comments and behavior during the meeting were not offensive, inappropriate, or otherwise warranting an apology, Plaintiff does not include any facts as to what he actually did or said during the meeting to support his more general allegations.

However, even if Plaintiff has alleged facts plausibly suggesting that Defendant Fishbein's statements in the email are false statements, he has not alleged facts plausibly suggesting that he was injured as a result of Defendant Fishbein's statements, or that those statements qualify as defamation per se. Plaintiff argues that, because they occurred in the workplace in front of coworkers and persons working with another state entity, they automatically qualify as statements tending to injure him in his trade, business, or profession. (Dkt. No. 13, Attach. 2, at 20-21 [Pl.'s Opp'n Mem. of Law].) However, Plaintiff offers no indication of how the Complaint alleges that Defendant Fishbein's statements tended to injure him as such. Nor does the mere fact that these statements were made in a work context to people Plaintiff worked with make those statements ones about his business, trade, or profession. *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 420 (S.D.N.Y. 2013) ("Courts have consistently held that any allegedly defamatory statements that do not affect a plaintiff's actual business profession, rather than simply qualities that are important for business, are not defamatory per se."); *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 77 (S.D.N.Y. 2012) ("To find

48

that a statement qualifies as one that tends to injure another in his or her trade, business, or profession, the statement 'must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities."); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550-51 (S.D.N.Y. 2011) (finding no tendency to injure plaintiff in her trade, business or profession based on statements that she treated employees like garbage, fired an employee because he is gay, hates homosexuals, and was a loose cannon because such statements do not suggest a general unfitness, incapacity, or inability to perform her duties as owner of the company); *Rufah v. Schwartz*, 858 N.Y.S.2d 194, 196 (N.Y. App. Div. 2d Dep't 2008) (finding that statements were not defamation per se where the statements included that plaintiff was attempting to deceive and defraud the school system because such statements were a general reflection on plaintiff's character and against him in a personal capacity rather than specifically in his capacity as an officer of a financial firm).  Therefore, Defendant Fishbein's statements implying that Plaintiff had acted in an inappropriate manner when cutting Mr. Brown off and when raising an issue at the meeting are merely a reflection on Plaintiff's conduct in that meeting, not a suggestion that he was generally unfit to perform the duties of his position and do not constitute defamation per se.

Additionally, New York recognizes a "single instance rule," pursuant to which "language charging a professional with ignorance or mistake on a single occasion only and not accusing him of general ignorance or lack of skill cannot be considered defamatory on its face and so is not actionable unless special damages are pleaded." *November v. Time, Inc.*, 13 N.Y.2d 175, 178 (N.Y. 1963).  Here, Defendant Fishbein's email does not imply that Plaintiff engaged in poor

behavior generally, but merely at this specific meeting. Nor do Plaintiff's allegations that he had been stigmatized as being unstable by others in his workplace suffice to impute an accusation of general inability to perform his job on Defendant Fishbein's statements, particularly as Plaintiff has not alleged (a) who specifically received Defendant Fishbein's email, and (b) whether those recipients were aware of that stigmatic perception of Plaintiff. As a result, Plaintiff is required to allege facts plausibly suggesting that he sustained special damages.

Plaintiff argues in his opposition memorandum of law, without providing any support from his factual allegations in the Complaint, that he sustained special damages (i.e., "the loss of something having economic or pecuniary value") because of the allegedly defamatory statements. *See Rufah,* 858 N.Y.S.2d at 196. However, Plaintiff asserts no allegations that he suffered any such economic or pecuniary loss as a result of Defendant Fishbein's email, and therefore has not alleged facts plausibly suggesting that he incurred special damages.

Because Plaintiff has failed to allege facts plausibly suggesting either special damages or defamation per se, the Court finds that Plaintiff's defamation claim should be, and is, dismissed. Additionally, because Plaintiff has not added any pertinent factual allegations related to this claim in the proposed Second Amended Complaint, any request to amend the Complaint as to this claim is denied as futile.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 8) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend the Complaint (Dkt. No. 13) is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's second cross-motion to amend the Complaint (Dkt. No. 19) is **GRANTED in part** and **DENIED in part** as discussed above in this Decision and Order; and it is further

**ORDERED** that the following claims are **DISMISSED**:

(1)     Plaintiff's claims for money damages against Defendants in their official capacities asserted under the ADA;

(2)     Plaintiff's claims against all individual Defendants in their personal capacities under both the ADA and the Rehabilitation Act;

(3)     Plaintiff's claims for hostile work environment under both the ADA and the Rehabilitation Act;

(4)     Plaintiff's claims for retaliation under both the ADA and the Rehabilitation Act; and

(5)     Plaintiff's Fourth Claim for defamation; and it is further

**ORDERED** that the following claims **SURVIVE** Defendants' motion to dismiss:

(1)     Plaintiff's claims for money damages against Defendant DVA asserted under the Rehabilitation Act;

(2)     Plaintiff's claims for injunctive relief against Defendants in their official capacities under both the ADA and the Rehabilitation Act; and

(3)     Plaintiff's claims for disability discrimination under both the ADA and the Rehabilitation Act; and it is further

**ORDERED** that Plaintiff's proposed Second Amended Complaint (Dkt. No. 19, Attach. 1) is accepted and substituted in all respects for the Complaint to the extent consistent with this

Decision and Order; the Clerk is directed to file and docket it as Plaintiff's Second Amended

Complaint.

Dated: September 24, 2019
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge